IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 13, 2015

## STATE OF TENNESSEE v. MATTHEW ALTON KING

**Appeal from the Circuit Court for Williamson County
No. II-CR087458, II-CR087459      Timothy L. Easter, Judge**

**No. M2014-01280-CCA-R3-CD – Filed June 4, 2015**

Matthew Alton King ("the Defendant") entered guilty pleas in case number CR087458 and CR087459 with the length of sentence and manner of service to be determined by the trial court. After the sentencing hearing, the trial court sentenced the Defendant to an effective sixteen years' incarceration. On appeal, the Defendant challenges both the length of his sentences and the denial of alternative sentencing. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Vanessa Pettigrew Bryan, District Public Defender; Benjamin C. Singer (on appeal) and Robert W. Jones (at trial), Assistant District Public Defenders, Franklin, Tennessee, for the Appellant, Matthew Alton King.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Kim Helper, District Attorney General; and Jessica Borne, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

In case number CR087458, the Defendant was indicted with two counts of aggravated assault and one count of domestic assault. In case number CR087459, the Defendant was indicted with one count each of aggravated assault; domestic assault; evading arrest; driving with a suspended, cancelled, or revoked license; initiating the process to manufacture methamphetamine; and possession of drug paraphernalia. The Defendant entered guilty pleas to all charges, with the sentence length and manner of service to be determined by the trial court after a hearing.

At the sentencing hearing, Williamson County Deputy Steve Mitchell testified that he was the arresting officer in case number CR087458. Deputy Mitchell was dispatched to the Defendant's mother's house for a possible domestic disturbance. After Deputy Mitchell knocked on the front door several times, the Defendant opened the front door. Deputy Mitchell asked the Defendant what was going on, and the Defendant said "nothing." The Defendant allowed Deputy Mitchell to enter the home, where Deputy Mitchell found the girlfriend of the Defendant, Ariella Berlin. Ms. Berlin did not say anything in the presence of the Defendant, but when additional officers arrived on the scene, Deputy Mitchell was able to speak to Ms. Berlin outside. Ms. Berlin informed him that she and the Defendant had gotten into an argument and that the Defendant became physical, pulled her hair, and choked her. Ms. Berlin was able to run outside, but the Defendant followed her and dragged her back into the house by her hair. Once inside the house, the Defendant began to poke Ms. Berlin's leg with a baseball bat. Deputy Mitchell reported that Ms. Berlin had hand marks around her neck and on her arm.

Deputy Mitchell described Ms. Berlin as "visibly frightened." When he first arrived at the scene, Ms. Berlin was in the fetal position on the couch "almost to the point of trembling" and appeared to have been crying. Additionally, Ms. Berlin was in her third trimester of pregnancy.

After speaking with Ms. Berlin, Deputy Mitchell attempted to speak with the Defendant. However, the Defendant became "somewhat belligerent" and refused to obey commands. The Defendant appeared to be under the influence, but the Defendant denied consuming drugs or alcohol. Deputy Mitchell placed the Defendant under arrest. Initially the Defendant resisted being placed into the patrol car, however, once inside the patrol car, the Defendant became emotional and said that he "was less of a man for what he had done." Later, Deputy Mitchell listened to a recording of phone calls the Defendant had made to his mother from the jail. In those calls, the Defendant admitted

that, on the three consecutive days before his arrest on these charges, he had "hit [Ms. Berlin] like a man."

Deputy Mitchell reported that he was familiar with the Defendant because he had "had dealings" with the Defendant since he was a juvenile. The Defendant was associated with various methamphetamine labs and had been arrested at his father's house on more than one occasion. As far as Deputy Mitchell knew, the Defendant was not employed.

Williamson County Deputy Aaron Ferguson testified that he responded to the 911 call in case number CR087459. The incident took place at the Defendant's mother and step-father's home. Angela Smith, the Defendant's mother, reported to police that the Defendant had waited until his step-father left and then entered Mrs. Smith's home looking for money. An argument ensued between the Defendant and Mrs. Smith, and the Defendant began "tearing up the house" and threatening to steal things. Mrs. Smith told the Defendant to leave several times, but the argument became more heated. Eventually, the Defendant grabbed a baseball bat and used it to strike Mrs. Smith in the back of the head. Mrs. Smith locked herself in the bathroom and called 911. When officers arrived, the Defendant had already left the scene.

Based on past experience with the Defendant, Deputy Ferguson believed that the Defendant was headed toward the Leiper's Fork area. Officers were dispatched to the area to look for the Defendant. Officers eventually found the Defendant's vehicle and attempted to pull the vehicle over. The Defendant did not stop but continued to drive in the center of the road, occasionally crossing into the oncoming traffic lane. The officers pursued the Defendant. When the Defendant crossed into Maury County, a Maury County patrol vehicle joined the chase, but the Defendant forced the vehicle off the road and into a ditch. The Maury County officer was able to bring his vehicle back onto the road and "ram[med]" the Defendant's vehicle with the patrol car in order to bring the Defendant to a stop. The Defendant was then taken into custody.

Deputy Ferguson had been dispatched to the Defendant's mother's house at least four or five times prior to the events in case number CR087459. On one occasion in 2012, Deputy Ferguson responded to a domestic disturbance call at the residence. The Defendant had come to the residence with his brother and their girlfriends. Roger Smith told them that they were not allowed on the property. However, the Defendant and his companions continued to beat on the doors until Mr. Smith eventually let them in to prevent them from kicking in the door. Once the Defendant was inside the home, an argument ensued. The Defendant found either a shirt or a towel, soaked it in paint thinner, lit it on fire, and threatened to kill everyone in the house. Mr. Smith kicked the burning cloth out of the house and told the Defendant to leave. However, the Defendant continued to use the paint thinner to light items in the house on fire. Eventually, the

Defendant went outside, where he took a hammer and "smashed out" the front and back windows of Mr. Smith's car. The Defendant then got into the car, drove donuts through the front yard, tried to run over Mr. Smith, and ran over the mailbox. The Defendant left the scene before officers arrived.

Williamson County Deputy Brad Fann testified that he assisted with the search of the Defendant's car in case number CR087459. In his search, he found methamphetamine as well as numerous items used to produce methamphetamine. Based on the items he found, Deputy Fann concluded that the Defendant had all the components necessary to manufacture methamphetamine. Prior to this case, Deputy Fann had investigated the Defendant in connection with another methamphetamine lab.

Mrs. Smith testified that, as a child, the Defendant could be very happy one minute and then "just blow a gasket the very next minute." He began to have trouble in school around fifth or sixth grade. The Defendant had been diagnosed with attention deficit disorder ("ADD") as well as oppositional defiant disorder ("ODD") and was prescribed medicine for both. The Defendant took the ADD medication but would not take the ODD medication. Later, the Defendant was diagnosed with bi-polar disorder and anxiety, but he did not receive treatment for those conditions.

The Defendant completed tenth grade in a traditional school environment. However, when the Defendant continued to get into trouble at school, Mrs. Smith withdrew him to be home-schooled. She estimated that the Defendant had an eleventh grade education, and she reported that he did not have his GED. Mrs. Smith stated that she first noticed the Defendant using drugs and alcohol when he was sixteen or seventeen years old.

Mrs. Smith stated that she did not call the police in case number CR087459 but claimed her father did. She testified that the Defendant was laying on his bed in her house and "all of a sudden" became "irate" over the fact that Mrs. Smith would not give him twenty dollars. The Defendant knocked things off the wall, turned over furniture, and punched the wall. Mrs. Smith grabbed a baseball bat and tried to chase the Defendant out of the house, but before Mrs. Smith was able to force the Defendant out of the house, he began to calm down. Mrs. Smith relaxed her grip on the bat, and the Defendant grabbed the bat. When Mrs. Smith "snatched" the bat back, the bat hit her in the side of the head. Realizing the Defendant was still angry, Mrs. Smith confined herself in the bathroom. She claimed that, at that point, the police contacted her. Mrs. Smith reported that the Defendant was "all messed up on drugs" during this encounter.

Mrs. Smith tried to get the Defendant treatment a number of times at the Defendant's request. However, she could not afford the treatment. She stated that the

Defendant was prone to making irrational choices. Mrs. Smith said the Defendant was welcome to live with her should he be released.

On cross-examination, Mrs. Smith stated that the Defendant had a daughter and that, during the first few months of his daughter's life, the Defendant cared for her while her mother was working.[1] The Defendant had since separated from his daughter's mother, but he still visited the child. Mrs. Smith was aware that the Defendant had been convicted of phone harassment of the child's mother. The Defendant had lived with the child's mother during 2009-2010. At all other times, the Defendant lived with Mrs. Smith.

The Defendant testified that he had been diagnosed with various mental disorders and reported that that he did not take the prescribed medication. He started experimenting with marijuana and alcohol when he was thirteen years old. At age sixteen, he began taking other drugs, specifically methamphetamine. Since that time, the Defendant's life had gone "downhill."

The Defendant reported that he and Ms. Berlin "fought all the time." In case number CR087458, Ms. Berlin had tried to leave, and the Defendant admitted that he prevented Ms. Berlin from leaving the home and "poked her in the knee with a bat." In case number CR087459, the Defendant reported that his mother had "come at [him] with the baseball bat," and when he tried to take it from her, it caused "a big commotion." He admitted that the police had chased him and found methamphetamine in his car.

The Defendant reported that he had sought help for his drug problem. He stated, "I was just—I was out of my mind. I didn't care about anything or anybody really. I was just worried about smoking dope." The Defendant had applied to Drug Court, but his application was denied. After he was arrested, the Defendant had received "write-ups" in the jail for flooding his cell and other incidents where he was "just acting stupid." The Defendant stated that he wanted to get help for his drug addiction and to complete his GED.

On cross-examination, the Defendant stated that, at the time of the offense in case number CR087458, he knew Ms. Berlin was six or seven months pregnant and he believed the child was his. He claimed that both he and Ms. Berlin were "strung out" at the time he choked her. The Defendant stated that he did not recall telling his mother on the phone that he had hit Ms. Berlin "like a man" in the days leading up to his arrest, but he would not deny making such a statement.

The Defendant admitted that he was arrested on five different occasions when he was eighteen years old. He was also arrested for drug charges when he was nineteen

---

[1] Ms. Berlin is not the mother of the Defendant's daughter.

years old. Additionally, the Defendant was arrested for the current charges, as well as the incident where he threatened to set his mother's house on fire when he was twenty years old.

The Defendant described his actions as "acting stupid" and explained, "I was messed up and I done a bunch of dumb things." The Defendant confirmed that he continued to use methamphetamine after his multiple arrests; every time he got out of jail, he immediately started to use drugs again. He stated that, when he was caring for his daughter, he did not smoke methamphetamine. However, in the past two years, he had started smoking methamphetamine every day. He stated that he decided to seek help for his drug addiction when he no longer cared about anything other than drugs. The Defendant stated that the eleven months he had been in jail for these charges had allowed him to reflect on his life and that he had decided to "change [himself] as best [he] can[.]"

In argument, the Defendant agreed that the sentences for each indictment must run consecutively to each other because the Defendant committed the offense in case number CR087459 while released on bond in case number CR087458. However, the Defendant asked that he be sentenced to the minimum sentence for each conviction and that the trial court sentence him to split confinement.

The trial court noted that it had considered the evidence received at the sentencing hearing, the principles of sentencing, the presentence report, arguments of counsel, the nature and characteristics of the criminal conduct involved, enhancing and mitigating factors, statistical information provided by the Administrative Office of the Courts, and the Defendant's testimony in setting the sentences. In case number CR087458, the trial court merged both counts of aggravated assault. The trial court then turned to consideration of enhancement factors.

As to the felony convictions in CR087459, the trial court found that, at the time of the offenses, the Defendant was released on "some type of bail" for offenses for which he was later convicted. See Tenn. Code Ann. § 40-35-114(13)(A) (2010). As to all of the felony convictions in both case numbers, the trial court found that the Defendant had a significant history of criminal behavior in addition to that necessary to establish the appropriate range of the offense and that the Defendant had previously failed to comply with conditions of a sentence that involved released into the community. See Tenn. Code Ann. § 40-35-114(1), (8) (2010).

Upon consideration of the mitigating factors, the trial court found that "the Defendant, because of youth or old aged, lacked substantial judgment in committ[ing] the offense." See Tenn. Code Ann. § 40-35-113(6) (2010). Additionally, the trial court stated, "[T]here is some legitimacy to the argument that [the Defendant] was rip-roaring high when he committed these offenses."

The trial court sentenced the Defendant as follows:

| Case Number | Conviction | Sentence |
| --- | --- | --- |
| CR087458 | Aggravated Assault | 5 years |
| CR087458 | Domestic Assault | 11 months 29 days |
| CR087459 | Aggravated Assault | 5 years |
| CR087459 | Domestic Assault | 11 months 29 days |
| CR087459 | Evading Arrest | 2 years |
| CR087459 | Driving with a Suspended, Cancelled, or Revoked License | 6 months |
| CR087459 | Initiation of the Process to Manufacture Methamphetamine | 11 years |
| CR087459 | Possession of Drug Paraphernalia | 11 months 29 days |

Within each respective case number, the sentences were set to run concurrently with each other. Pursuant to Tennessee Rule of Criminal Procedure 32(c)(3)(C), case number CR087459 was ordered to run consecutively to case number CR087458. Consequently, the Defendant received an effective sixteen-year sentence.

After a review of the confinement considerations, the trial court ordered the Defendant to serve his sentence in confinement. Specifically, the trial court found that confinement was necessary to protect society from a defendant who had a long history of criminal conduct; confinement was necessary to avoid depreciation of the seriousness of the offense; and that measures less restrictive than confinement had been frequently or recently been applied unsuccessfully to the Defendant. As to the question of Drug Court or other alternative sentencing, the trial court found that the Defendant was not an appropriate candidate. This timely appeal followed.

## Analysis

It is unclear from the Defendant's brief, but he appears to challenge both the length of his sentence and the denial of alternative sentencing. Therefore, we will address both in this opinion.

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). A court only abuses its discretion when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." State v. Kyto Sihapanya, __ S.W.3d __, ____No.

W2012-00716-SC-R11-CD, 2014 WL 2466054, at *2 (Tenn. Apr. 30, 2014) (quoting State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997)). "[A] trial court's misapplication of an enhancement or mitigating factor does not remove the presumption of reasonableness from its sentencing determination." Bise 380 S.W.3d at 709. Moreover, this court may not disturb the sentence even if it had preferred a different result. See State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). The same standard applies when a defendant challenges the denial of probation or other alternative sentence. State v. Candle, 388 S.W.3d 273, 278-79 (Tenn. 2012).

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2010); Bise, 380 S.W.3d at 706. However, "[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]." Bise, 380 S.W.3d at 705-06. The party appealing the sentence has the burden of demonstrating its impropriety. Tenn. Code Ann. § 40-35-401 (2010), Sent'g Comm'n Cmts.; see also State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210(b) (2010); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court should also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. Tenn. Code Ann. § 40-35-103(5) (2010).

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c) (2010).

Although the trial court should also consider enhancement and mitigating factors, the statutory enhancement factors are advisory only.  See Tenn. Code Ann. § 40-35-114 (2010 & Supp. 2013); see also Bise, 380 S.W.3d at 699 n. 33, 704; Carter, 254 S.W.3d at 343.  We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." Carter, 254 S.W.3d at 345.  In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Id. at 343.  "[Appellate courts are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Carter, 254 S.W.3d at 346.

In recognition of the limited resources of the state prisons, sentences of confinement are limited to "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society[,] and evincing failure of past efforts at rehabilitation[.]" Tenn. Code Ann. § 40-35-102(5) (2010).  Defendants who do not fall within one of these categories and who are especially mitigated or standard offenders convicted of a Class C, D, or E felony are considered to be favorable candidates for alternative sentencing, absent evidence to the contrary. Tenn. Code Ann. § 40-35-102(6)(A) (2010); see State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  A trial court must consider, but is not bound by, this advisory sentencing guideline. Tenn. Code Ann. § 40-35-102(6)(D) (2010).

 "Guidance as to what will constitute "evidence to the contrary" is found in [Tennessee Code Annotated section] 40-35-103(1)." Ashby, 823 S.W.2d at 169; see also State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000).  Tennessee Code Annotated section 40-35-103(1) states that the trial court may order confinement when:

(A)  Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B)  Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C)  Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1) (2010).

In this case, the trial court properly applied the principles and purposes of sentencing and explained its reasoning on the record.  As such, we review the trial court's sentencing decision for an abuse of discretion with a presumption of reasonableness.

The record supports the trial court's application of enhancement factors in setting the length of sentence.  It is clear from the presentence report, as well as the testimony presented at the sentencing hearing, that the Defendant had a long history of illegal drug use and had previously been arrested for various felony charges, including several charges related to his methamphetamine use.  See Tenn. Code Ann. § 40-35-114(1) (2010).  Additionally, the presentence report indicates that the Defendant has two prior violations of probation.  See Tenn. Code Ann. § 40-35-114(8) (2010).  Finally, the Defendant admitted that he committed the offenses in case number CR08459 while he was released on bond for case number CR087458.  See Tenn. Code Ann. § 40-35-114(13) (2010).  While it is admirable that the Defendant wishes to seek treatment for his drug addiction, we do not believe such desire is sufficient to show that the trial court did not properly consider the Defendant's potential for rehabilitation when determining the length of his sentence.  The Defendant admitted during the sentencing hearing that he had previously been in jail and had immediately resumed his drug use upon release.  As such, we conclude that the Defendant has failed to prove that the trial court abused its discretion when imposing an effective sixteen-year sentence.  See Tenn. Code Ann. § 40-35-401 (2010), Sent'g Comm'n Cmts.; Ashby, 823 S.W.2d at 169.

We next turn to whether the trial court abused its discretion when it ordered the Defendant to serve his sentence in confinement.  At the sentencing hearing, the Defendant asked that he be sentenced to split confinement.  Split confinement is a form of probation.  See Tenn. Code Ann. § 40-35-306 (2010).  In order to be eligible for probation, the Defendant's sentence cannot exceed ten years.  See Tenn. Code Ann. § 40-35-303(a) (Supp. 2013).  Therefore, because the Defendant was sentenced to eleven years for initiating the process to manufacture methamphetamine, he is not eligible for probation in case number CR087459.

With regard to case number CR087458, we do not believe the trial court abused its discretion in denying alternative sentencing.  The Defendant pled guilty, as a Range I standard offender, to aggravated assault, a Class C felony.  As such, he is considered a favorable candidate for alternative sentencing under the relevant advisory sentencing guideline.  See Tenn. Code Ann. § 40-35-102(6)(A) (2010).  However, the trial court specifically found confinement was necessary to protect society because the Defendant

had a long history of criminal conduct; and was necessary to avoid depreciating the seriousness of the offense and that measures less restrictive than confinement had frequently or recently been applied unsuccessfully to the Defendant. See Tenn. Code Ann. § 40-35-103(1)(A)-(C) (2010). The record supports these findings. Consequently, we conclude that the Defendant has failed to prove that the trial court abused its discretion when it denied alternative sentencing. See Tenn. Code Ann. § 40-35-401 (2010), Sent'g Comm'n Cmts.; Ashby, 823 S.W.2d at 169.

## Conclusion

For the aforementioned reasons, we affirm the judgments of the trial court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE